Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAN 1 8 2023

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:22-CR-52-TOR-2 |
| Plaintiff, | Plea Agreement |
| v. | |
| ERIC A. EAGLETON, | |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant Eric A. Eagleton ("Defendant"), both individually and by and through Defendant's counsel, David R. Miller, agree to the following Plea Agreement.

1. <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to Count 2 of the Superseding Indictment filed on June 7, 2022, which charges Defendant with Possession of Stolen Ammunition, in violation of 18 U.S.C. §§ 922(j), 924(a)(2), a Class C felony.

Defendant understands that the following potential penalties apply:

    a.    a term of imprisonment of not more than 10 years;

PLEA AGREEMENT - 1

1      b.    a term of supervised release not to exceed 3 years;

2      c.    a fine of up to $250,000; and

3      d.    a $100 special penalty assessment.

2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 2

  c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

  d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

  e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

  f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

  a. pleading guilty in this case may have immigration consequences;

  b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

  c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

  d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

PLEA AGREEMENT - 3

5.  **Waiver of Constitutional Rights**

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a.  the right to a jury trial;

    b.  the right to see, hear and question the witnesses;

    c.  the right to remain silent at trial;

    d.  the right to testify at trial; and

    e.  the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.  **Elements of the Offense**

The United States and Defendant agree that in order to convict Defendant of Possession of Stolen Ammunition, in violation of 18 U.S.C. §§ 922(j), 924(a)(2), the United States would have to prove the following beyond a reasonable doubt.

    a.  *First*, on or about March 12, 2022, within the Eastern District of Washington, Defendant knowingly possessed stolen ammunition;

    b.  *Second*, the ammunition had been shipped or transported in interstate or foreign commerce; and

PLEA AGREEMENT - 4

   c. *Third*, at the time of the possession, Defendant knew or had reasonable cause to believe that the ammunition had been stolen.

7. <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

In August 2021, the Federal Bureau of Investigation (FBI) and United States Air Force Office of Special Investigations (AFOSI) initiated an investigation into Airman John I. Sanger. The investigation involved the use of an undercover agent (UC). During the investigation into Airman Sanger, the FBI and AFOSI learned Sanger was able to secure stolen military ammunition from a member, later identified as Nathan Richards, of the Fairchild 92nd Security Forces Squadron Combat Arms Training Management (CATM) section. The CATM is responsible for ensuring members of the Air Force are trained and combat ready to safely use and maintain all types of small arms. Richards invited Sanger, who in turn invited the UC, to go shooting with he and other members of CATM at Fishtrap Lake, in the Eastern District of Washington.

On March 12, 2022, the UC, Sanger, Richards, the Defendant, and others, arrived at Fishtrap Lake and engaged in target shooting using stolen ammunition, specifically green tip 5.56 M855 ammunition, from the U.S. Air Force's CATM section. At the conclusion of the event, Sanger was provided additional stolen

PLEA AGREEMENT - 5

ammunition from Richards for his personal use. Sanger subsequently provided the UC a small portion of the stolen ammunition.

On March 28, 2022, Sanger sent a text message to the UC stating the Defendant contacted him (Sanger) because the Defendant had additional ammunition to give him. A portion of the text message conversation follows:

> Sanger: *"Eagle (the Defendant) can hook us up with some rounds. Dude's awesome."*
>
> UC: *'Really? How much does he want for them?"*
>
> Sanger: *"Nothing. It's stolen."*
>
> UC: *"Seriously? Bro that's awesome. Think we can get them before Saturday's range day?"*
>
> Sanger: *"Yeah he's solid man. I'm gonna (sic) get the ammo tomorrow."*

The following day, March 29, 2022, AFOSI agents observed the Defendant and Sanger meet in the Northern Quest Resort and Casino, located at 100 N. Hayford Rd., Airway Heights, Washington. The agents observed the Defendant retrieve a military style green ammunition can from his Ford F-150 pickup truck and then meet with Sanger. The Defendant was observed opening the top of the ammunition can and showing Sanger the contents before handing the ammunition can over.

Following the meeting between Sanger and the Defendant, Sanger sent the UC text messages with photographs indicating the receipt of stolen 5.56mm ammunition.

Subsequently, on April 2, 2022, Sanger and the UC shot approximately 250 rounds of the stolen ammunition Sanger received from the Defendant at Fishtrap Lake. During the shoot, the UC recovered four ammunition clips containing 40 rounds of 5.56mm ammunition from Sanger. Also during the shoot, the UC photographed the side of the green ammunition container which Sanger brought to

PLEA AGREEMENT - 6

the shoot. A review of CATM records indicated this ammunition was expended sometime between March 2, 2021 and July 21, 2021.

On April 26, 2022, the FBI and AFOSI executed a series of search warrants at Sanger and the Defendant's residences. During the search of the Defendant's residence, agents located approximately 1600 rounds of suspected stolen U.S. Air Force ammunition, a crate containing ammunition labeled "US-DOD," and a firearm suppressor, identified as a gold or bronze in color suppressor consistent with the suppressor used by the Defendant on March 12, 2022.

The Defendant stipulates the stolen ammunition was ammunition belonging to the United States Air Force and that the ammunition traveled in interstate commerce.

8.  <u>The United States' Agreements</u>

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss:

Count 1 – Conspiracy to Commit Theft of Government Property and Possession of Stolen Ammunition, in violation of 18 U.S.C. § 371;

Count 3 – Possession of Stolen Ammunition, in violation of 18 U.S.C. §§ 922(j), 924(a)(2);

Count 5 - Possession of Stolen Ammunition, in violation of 18 U.S.C. §§ 922(j), 924(a)(2); and

Count 11 – Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871;

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9.  <u>United States Sentencing Guidelines Calculations</u>

PLEA AGREEMENT - 7

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

    a.    <u>Base Offense Level</u>

The United States and the Defendant make no agreement regarding the base offense level.

    b.    <u>Specific Offense Characteristics</u>

The United States and the Defendant make no agreement on the application of specific offense characteristics. The parties are free to argue for or against the application of any specific offense characteristics.

    c.    <u>Acceptance of Responsibility</u>

The United States will recommend that Defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive

PLEA AGREEMENT - 8

for any controlled substance.

        d.    <u>Administrative Separation from the United States Air Force</u>

The Defendant acknowledges, independent from his plea of guilty in this matter, the United States Air Force may seek to administratively separate him from the service with an other than honorable characterization of service. The Defendant further acknowledges that a plea of guilty in this matter will likely have significant impact on his future service. The Defendant acknowledges, based upon his plea of guilty in this matter, that he has been notified of his right to proceed to board proceedings and intends to waive his right to a board.

        e.    <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

        f.    <u>Criminal History</u>

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

10.   <u>Incarceration</u>

The United States agrees to recommend a sentence no higher than the low end of the applicable guideline as determined by the Court at sentencing.

Defendant may recommend any legal sentence.


11.   <u>Supervised Release</u>

PLEA AGREEMENT - 9

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a. The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

12. <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13. <u>Administrative Forfeiture:</u>

Defendant agrees to voluntarily forfeit any and all right, title, and interest he has in the silencer held by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), in favor of ATF:

    a gold and bronze in color firearm suppressor, bearing no tax stamps, markings or serial number

PLEA AGREEMENT - 10

  Defendant stipulates that the firearm suppressor he is agreeing to administratively forfeit is subject to forfeiture pursuant to 49 U.S.C. § 80303, 26 U.S.C. § 5872 and 28 U.S.C. § 2461, for a violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), 5871, Possession of an Unregistered Firearm.

  Defendant agrees not to contest the forfeiture of the firearm suppressor in any administrative forfeiture proceedings initiated against said asset by ATF, and hereby agrees to execute any and all forms, documents, and pleadings necessary to effectuate the administrative forfeiture of the firearm suppressor.

  Defendant waives any right he might have otherwise had to receive notice or a hearing with respect to any action ATF might take, in its sole discretion, to carry out the administrative forfeiture and destruction of the firearm suppressor. Defendant's waiver includes, without limitation, all common law, statutory ad constitutional claims or challenges, on any grounds, arising at any time from or relating to, the seizure, administrative forfeiture and destruction of the firearm suppressor listed herein, including any such claim for attorney fees and litigation costs. Defendant consents to the disposal, including destruction, without further notice.

  Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, forfeiture, and destruction, of any assets covered by this agreement.

  Defendant agrees to voluntarily forfeit and relinquish to the United States all right, title and interest in all assets listed herein, and hereby agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture of assets.

PLEA AGREEMENT - 11

14. <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack

PLEA AGREEMENT - 12

upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Compassionate Release</u>

In consideration for the benefits Defendant is receiving under the terms of this Plea Agreement, Defendant expressly waives Defendant's right to bring any motion for Compassionate Release other than a motion arising from one of the specific bases set forth in this paragraph of this Plea Agreement. The United States retains the right to oppose, on any basis, any motion Defendant files for Compassionate Release.

The only bases on which Defendant may file a motion for Compassionate Release in the Eastern District of Washington are the following:

    a. <u>Medical Condition of Defendant</u>

        i. Defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia; or

        ii. Defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which Defendant is not expected to recover.

PLEA AGREEMENT - 13

b. <u>Age of Defendant</u>

    i. Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of Defendant's term of imprisonment, whichever is less; or

    ii. Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

c. <u>Family Circumstances</u>

    i. The caregiver of Defendant's minor child or children has died or become incapacitated, and Defendant is the only available caregiver for Defendant's minor child or children; or

    ii. Defendant's spouse or registered partner has become incapacitated, and Defendant is the only available caregiver for Defendant's spouse or registered partner.

d. <u>Subsequent Reduction to Mandatory Sentence</u>

    i. Defendant pleaded guilty to an offense which, on the date of Defendant's guilty plea, carried a mandatory minimum sentence; and

    ii. after the entry of judgment, the length of the mandatory minimum sentence for Defendant's offense of conviction was reduced by a change in the law; and

    iii. the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

  e. <u>Ineffective Assistance of Counsel</u>
    i. Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both
      1. did not know at the time of Defendant's guilty plea, and
      2. could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

19. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

  a. this Plea Agreement shall become null and void;
  b. the United States may prosecute Defendant on all available charges;
  c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and
  d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any

PLEA AGREEMENT - 15

objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20. <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____                    1/18/2023
Patrick J. Cashman                            Date
Assistant United States Attorney

PLEA AGREEMENT - 16

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____          18 Jan 23
Eric A. Eagleton                                             Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          Ja 18, 2023
David R. Miller                                            Date
Attorney for Defendant

PLEA AGREEMENT - 17